# Third District Court of Appeal
## State of Florida

Opinion filed August 12, 2026.
Not final until disposition of timely filed motion for rehearing.

————————————

No. 3D25-0068
Lower Tribunal No. 14-2379-CA-01

————————————

**Manuel C. Diaz,**
Appellant,

vs.

**Cat Cay Holdings JHR, LLC, etc.,**
Appellee.

An Appeal from the Circuit Court for Miami-Dade County, David C. Miller, Judge.

Gray | Robinson, P.A., and Jack Roy Reiter, Sydney Feldman D'Angelo and Robert C. Weill; Nicholas B. Bangos, P.A., and Nicholas Basil Bangos (Palm Beach Gardens), for appellant.

MSP Recovery Law Firm, and John Hasan Ruiz, Christine M. Lugo and Janpaul Portal, for appellee.

Before LINDSEY, MILLER and GOODEN, JJ.

GOODEN, J.

Appellant Manuel C. Diaz appeals a final summary judgment entered in favor of Appellee Cat Cay Holdings JHR, LLC on its claim for unjust enrichment. Because we find it was error, we reverse and remand for further proceedings.

**I.**

Diaz owns Manuel Diaz Farms, a tree business in Miami-Dade County. In the 1980s and 1990s, Diaz purchased several properties in Cat Cay, Bahamas. He also purchased equity shares in Cat Cay Yacht Club. He eventually became the largest equity shareholder and served as president of the Club's board of directors. But his relationship with the board soured, leading to his expulsion from membership. As a result, Diaz filed suit against Cat Cay Yacht Club and members of the board of directors for injunctive relief and damages.

While the case was pending in April 2021, Diaz entered into an agreement with John Ruiz. Diaz sold Ruiz his Cat Cay properties, two boat slips, and his equity membership interests. Following the closing, Diaz was obligated to pay $600,000 in commissions to Cat Cay Yacht Club. Ruiz orally agreed to pay the commissions in exchange for Diaz providing $600,000 worth of trees.

2

The case proceeded to trial. The jury ultimately returned a verdict of more than $35 million for Diaz. Ruiz intervened, asserting he had an interest in the litigation.

The parties eventually settled and the case was dismissed. But, in the settlement agreement, Ruiz did not release Diaz from future claims that he may have against Diaz. This included "any and all claims arising from the $600,000 worth of trees that Diaz contracted with Ruiz to provide . . . ." The settlement agreement did not contain any reference to Diaz paying cash in lieu of trees or what occurs if Diaz defaults.

Even so, Ruiz did not attempt to obtain any trees from Diaz until January 2024—almost three years after the contract was made. At that time, he texted Diaz's general manager requesting a portion of the trees for a friend, Abelardo Rivera. Diaz believed that there was a two-year time limit on the credit, as this was his general business practice. So he contacted the attorney who had handled the closing to confirm. But the attorney advised that the agreement had never been memorialized in writing. Even so, Diaz agreed to honor the request and provide the trees.

Rivera visited the farm and selected trees. But a site visit to his home revealed that the trees were not suitable for the property. Discussions "started going in circles as to what the Rivera couple wanted, how they

3

wanted it, [and] when they wanted it." Diaz asked the attorney to mediate a resolution of the tree credit with both Ruiz and Rivera.

The attorney proposed a solution—Ruiz would use $60,000 of his tree credit for Rivera and would "identify trees to satisfy the remaining $540,000 balance and have those trees removed at his expense." He advised, "[t]his can be completed in the near future so that [Diaz] can close this chapter and not have to worry about it dragging on any longer."

Diaz's general manager reiterated Diaz's belief that the agreement had expired, but proposed specific types and sizes of 200 trees for Ruiz to pick up within two months, by April 15, 2024. She believed this was "fair and reasonable" since three years had passed. The attorney responded that Ruiz "would be fine with identifying the trees within 6 months and removing them by May 2025." The general manager offered delivery by May 1, 2024. Neither the attorney nor Ruiz responded. Diaz did not hear anything for several months.

Meanwhile, Ruiz assigned his interests to Cat Cay Holdings. Then, Cat Cay Holdings filed suit against Diaz, asserting claims for breach of contract and unjust enrichment.[1] Diaz answered. Both parties agreed there was a valid and enforceable oral agreement between the parties. But Cat

---

[1] The trial court consolidated the two actions and vacated the initial dismissal.

4

Cay Holdings contended that Ruiz lent $600,000 to Diaz and Diaz was to pay him with either $600,000 in trees or cash, while Diaz maintained that the agreement was for Ruiz to pay the $600,000 commission in exchange for $600,000 in trees.

In any event, Diaz maintained he was "ready, willing, and able" to provide the trees and continued to demonstrate his willingness throughout the litigation. In August 2024, Diaz communicated his intent to honor the tree credit, but Cat Cay Holdings wanted two years to remove the trees. The following month, Ruiz requested that another individual be permitted to visit the farm and inspect trees. Diaz agreed. The parties discussed dates, but Ruiz never finalized any arrangements.

Instead, Cat Cay Holdings moved for summary judgment. It maintained that the parties entered into a valid contract, Diaz "materially breached" the contract, and Ruiz had been damaged in the amount of $600,000. Alternatively, it argued that Ruiz had conferred a benefit on Diaz, Diaz "accepted the benefit" but "failed to comply with the terms of the Agreement," and "it would be inequitable for [Diaz] to retain the benefit that was conferred upon him."

Diaz filed a response and cross-moved for summary judgment. While Diaz again conceded there is a valid oral contract, he maintained the

5

agreement was for $600,000 in trees only. Pointing to evidence showing his willingness to honor that agreement, he contended there was no material breach. Instead, Ruiz prevented his performance of the contract. Next, Diaz asserted that the unjust enrichment claim fails as a matter of law because there is a valid contract. And, at a minimum, he claimed there were genuine disputes of material fact since he was not seeking to retain the benefits of the agreement as he had repeatedly tried to coordinate the selection of trees.

At the hearing on the motions, the trial court interjected: "you know, guys, it occurs to me that you would never agree on what trees constitute $600,000 . . . ." Significantly, the issue of lack of specificity of essential terms was never raised by either party. Consistently, both sides maintained that they had entered into an enforceable oral contract.[2] Still, the trial court concluded on its own initiative that the agreement lacked sufficiently definite terms to be enforceable—such as "which trees, where, what trees, where delivered, what time." Diaz objected, reiterating that both parties agreed there is a valid contract. Ultimately, the trial court denied Cat Cay Holdings'

---

[2] In fact, Cat Cay Holdings incorporated into its unjust enrichment count the allegation that the parties had a valid and enforceable oral contract. Cf. Fla. R. Civ. P. 1.110(b)(2). Likewise, in its motion for summary judgment, Cat Cay Holdings stated it was undisputed that the parties had a valid, enforceable agreement and its claim for unjust enrichment hinged on Diaz not complying with that agreement. At no point did it argue that no contract existed.

6

motion on the breach of contract claim finding disputes of material fact, but granted it on the unjust enrichment claim. It denied Diaz's motion in its entirety.

The trial court entered final judgment on Cat Cay Holdings' unjust enrichment claim for $600,000, plus prejudgment interest. The judgment did not reference the claim for breach of contract. This appeal follows.

## II.

It is incumbent on us to analyze our jurisdiction in every case. Fabre v. 4647 Block, LLC, 401 So. 3d 523, 526 (Fla. 3d DCA 2024). See also Bloomgarden v. Mandel, 154 So. 3d 451, 453 (Fla. 3d DCA 2014) ("Florida's appellate courts, however, have an independent duty to determine the existence of jurisdiction in every case and must dismiss those cases over which there is no jurisdiction."). Without it, we are powerless to act. Eco Green Int'l, LLC v. Acapital, S.R.O., 427 So. 3d 577, 581 (Fla. 3d DCA 2025). See also Fisher v. Hous. Auth. of City of Key W., 424 So. 3d 1017, 1022 (Fla. 3d DCA 2025) ("Without jurisdiction, there is only one action we can take: we must dismiss."). And so, that is our first task.[3]

Our focus here is on whether the final judgment for unjust enrichment is a final order appealable under Florida Rule of Appellate Procedure 9.110.

---

[3] To this end, we ordered supplement briefing.

7

See Art. V, § 4(b)(1), Fla. Const. The complaint contained two counts: breach of contract and unjust enrichment. Although the trial court entered final judgment on the unjust enrichment claim, it denied Cat Cay Holdings' motion for summary judgment on the breach of contract claim, finding the existence of a genuine dispute of material fact. The final judgment makes no mention of the breach of contract claim. At the same time, the order contains traditional language of finality, entering judgment in a specified amount "for all of which let execution issue forthwith."

"Generally, the test employed by the appellate court to determine finality of an order, judgment or decree is whether the order in question constitutes an end to the judicial labor in the cause, and nothing further remains to be done by the court to effectuate a termination of the cause as between the parties directly affected." S. L. T. Warehouse Co. v. Webb, 304 So. 2d 97, 99 (Fla. 1974). See also Caufield v. Cantele, 837 So. 2d 371, 375 (Fla. 2002) ("A final judgment is one which ends the litigation between the parties and disposes of all issues involved such that no further action by the court will be necessary."). We look beyond the title, and instead focus on the content and substance of the order to determine whether it fully and finally adjudicates the parties' claims. Colby III, Inc. v. Centennial Westland Mall Partners, LLC, 386 So. 3d 1003, 1005 (Fla. 3d DCA 2023).

8

Ordinarily, an order is not final when interrelated claims arising from the same transaction and involving the same parties remain pending. See Fabre, 401 So. 3d at 526. Cf. Fla. R. App. P. 9.110(k) ("A partial final judgment, other than one that disposes of an entire case as to any party, is one that disposes of a separate and distinct cause of action that is not interdependent with other pleaded claims."). In that regard, "[a] final summary judgment entered on one count of a multi-count complaint is not appealable where interrelated counts remain." Welch v. Resol. Tr. Corp., 590 So. 2d 1098, 1099 (Fla. 5th DCA 1991). "Simply put, inclusion of language of finality does not transform a non-final order into a final order where there is still judicial work to be had." Fabre, 401 So. 3d at 526.

An order may nonetheless be final when it implicitly resolves all claims in the complaint. See Harbor Cmtys., LLC v. Jerue, 81 So. 3d 568, 571 (Fla. 4th DCA 2012); Fla. Nat'l Bank v. Carr & Schnell, 540 So. 2d 217, 218 n.3 (Fla. 2d DCA 1989). That is the case here. Although the complaint asserted two counts, both sought the same damages and advanced alternative theories of recovery arising from the same transaction. To this end, while the judgment expressly adjudicated only the claim for unjust enrichment, it necessarily resolved the entire controversy between the parties and effectively disposed of the entire action. Because Cat Cay Holdings could

9

not recover under both theories, no claim remained for adjudication. See Hazen v. Cobb, 117 So. 853, 858 (Fla. 1928) ("The law will not imply a contract where a valid express one exists."); First Data Res., Inc. v. Safecard Servs., Inc., 574 So. 2d 311, 311 (Fla. 3d DCA 1991) ("[B]reach of contract and quantum meruit are mutually exclusive remedies."). Cat Cay Holdings recovered the full amount sought. No judicial labor remained.

Accordingly, the judgment is final. We have jurisdiction to proceed.

**III.**

Our review of a final summary judgment is de novo. Volusia Cnty. v. Aberdeen at Ormond Beach, L.P., 760 So. 2d 126, 130 (Fla. 2000). Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fla. R. Civ. P. 1.510(a).

**IV.**

Florida recognizes express contracts and two forms of implied contracts—with each occupying a distinct place in the legal hierarchy. Only in the absence of an enforceable express agreement may the law imply contractual obligations.

An express contract is where "an agreement is arrived at by words, oral or written." Com. P'ship 8098 Ltd. P'ship v. Equity Contracting Co., Inc.,

10

695 So. 2d 383, 385 (Fla. 4th DCA 1997). Formation requires an offer setting forth its essential terms, an acceptance of those terms by the offeree, and consideration. See Suarez Trucking FL Corp. v. Souders, 350 So. 3d 38, 42 (Fla. 2022); St. Joe Corp. v. McIver, 875 So. 2d 375, 381 (Fla. 2004). But "[t]he fact that nonessential terms remain open is not fatal . . . ." St. Joe Corp., 875 So. 2d at 381. See also Blackhawk Heating & Plumbing Co., Inc. v. Data Lease Fin. Corp., 302 So. 2d 404, 408 (Fla. 1974).

Implied-in-fact contracts differ only in the way the parties express their mutual assent. Instead of words, it is based on the parties' conduct. Baron v. Osman, 39 So. 3d 449, 451 (Fla. 5th DCA 2010). The parties' behavior reasonably infers a meeting of the minds and an intent to be bound. Bromer v. Fla. Power & Light Co., 45 So. 2d 658, 660 (Fla. 1949). "While the law will not recognize an implied-in-fact contract where an express contract exists, a contract may be inferred where an express contract fails for lack of proof." Baron, 39 So. 3d at 451. See also Quayside Assocs., Ltd. v. Triefler, 506 So. 2d 6, 7 (Fla. 3d DCA 1987).

On the other hand, implied-in-law contracts[4] are distinct from both express and implied-in-fact contracts. Implied-in-law contracts are not

---

[4] "To describe the cause of action encompassed by a contract implied in law, Florida courts have synonymously used a number of different terms—'quasi contract,' 'unjust enrichment,' 'restitution,' 'constructive contract,' and

11

contracts at all.  Rather, they are "obligations imposed by law on grounds of justice and equity, and do not rest upon the assent of the contracting parties." Tipper v. Great Lakes Chem. Co., 281 So. 2d 10, 13 (Fla. 1973).  This legal fiction "was adopted to provide a remedy where one party was unjustly enriched, where that party received a benefit under circumstances that made it unjust to retain it without giving compensation."  Com. P'ship 8098 Ltd. P'ship, 695 So. 2d at 386.  It is "designed to permit recovery by contractual remedy in those cases where there is no contract."  Dooley v. Gary the Carpenter Constr., Inc., 388 So. 3d 881, 883 (Fla. 3d DCA 2023).  See also CDS & Assocs. of Palm Beaches, Inc. v. 1711 Donna Rd. Assocs., Inc., 743 So. 2d 1223, 1224 (Fla. 4th DCA 1999) ("In short, a contract implied in law does not require an agreement, however, a contract implied in fact does.").

"If no express or implied-in-fact contract exists, a party may recover under [unjust enrichment]."  Baron, 39 So. 3d at 451.  A successful claim for unjust enrichment requires a plaintiff to demonstrate "(1) plaintiff has conferred a benefit on the defendant, who has knowledge thereof; (2) defendant voluntarily accepts and retains the benefit conferred; and (3) the

---

'quantum meruit.'"  Commerce P'ship 8098 Ltd. P'ship, 695 So. 2d at 386. See also Doral Collision Ctr., Inc. v. Daimler Tr., 341 So. 3d 424, 429 (Fla. 3d DCA 2022).  For simplicity's sake, we use "unjust enrichment."

12

circumstances are such that it would be inequitable for the defendant to retain the benefit without first paying the value thereof to the plaintiff." Agritrade, LP v. Quercia, 253 So. 3d 28, 33 (Fla. 3d DCA 2017) (citation omitted).

While a plaintiff may alternatively allege claims for breach of contract and unjust enrichment, he cannot recover under both. See Fla. R. Civ. P. 1.110(g). The remedies for express contract and unjust enrichment are mutually exclusive. First Data Res., Inc., 574 So. 2d at 311. If there is a valid express contract, the plaintiff cannot recover for unjust enrichment. Indeed, "[t]he law will not imply a contract where a valid express one exists." Hazen, 117 So. at 858. See also Miracle Ctr. Dev. Corp. v. M.A.D. Constr., Inc., 662 So. 2d 1288, 1290 (Fla. 3d DCA 1995) ("It has been said that seeking to enforce an express contract while attempting the same purpose under [unjust enrichment] is incongruous."); Tobin & Tobin Ins. Agency, Inc. v. Zeskind, 315 So. 2d 518, 520 (Fla. 3d DCA 1975) ("As a general rule, an action seeking to enforce an express contract and also attempting to disavow the existence of the express contract and accomplish the same purpose under [unjust enrichment] is not available.").

Diaz maintains that it was error for the trial court to grant summary judgment on Cat Cay Holdings' claim for unjust enrichment where an

13

enforceable express oral contract exists. Cat Cay Holdings counters by attacking that contract, claiming it is unenforceable for lack of specificity. It bases that argument on the trial court's comments during the summary judgment hearing.

However, the pleadings, the summary judgment record evidence, and the parties' conduct all demonstrate the existence of an enforceable express oral contract with sufficiently definite essential terms. Indeed, throughout this litigation, both parties understood that they had entered a valid and enforceable oral contract.

The essential terms of that contract were straightforward. Ruiz agreed to pay—and did pay—$600,000 in commissions to Cat Cay Yacht Club. In exchange, Diaz agreed to provide Ruiz with a $600,000 credit toward the purchase of trees. What is more, the parties intended to be bound by these essential terms. There is no dispute that Ruiz fully performed by paying the agreed-upon commission. Nor is there any dispute that Diaz repeatedly acknowledged the existence of the $600,000 tree credit.

The parties' failure to resolve every subsidiary detail does not render the contract unenforceable. The agreement did not specify the particular

14

trees to be selected or the precise time for their removal.[5]  Neither omission defeats contract formation.  See Robbie v. City of Miami, 469 So. 2d 1384, 1385 (Fla. 1985) ("In addition, parties to a contract do not have to deal with every contingency in order to have an enforceable contract."); Blackhawk Heating & Plumbing Co., Inc., 302 So. 2d at 408 ("Even though all the details are not definitely fixed, an agreement may be binding if the parties agree on the essential terms and seriously understand and intend the agreement to be binding on them.  A subsequent difference as to the construction of the contract does not affect the validity of the contract or indicate the minds of the parties did not meet with respect thereto."); Greenwood v. Rotfort, 28 So. 2d 825, 831 (Fla. 1946) ("[W]hen a contract does not expressly fix the time for performance of its terms, the law will imply a reasonable time.").

That principle applies with particular force here—where one party fully performed and the other accepted the benefit of that performance.  Ruiz's performance of his contractual obligations by paying the agreed-upon $600,000 commission was accepted by Diaz, who also acknowledged the

---

[5]  While what qualifies as an essential term varies depending on the circumstances, these terms were not essential to the agreement.  This is evidenced by the fact that they were not even mentioned in the settlement agreement—the one document referencing this express oral contract.  In the end, which trees are included is not important.  Instead, the value of the trees is.

15

corresponding $600,000 tree credit. Under these circumstances, Florida courts are especially reluctant to invalidate an oral contract for indefiniteness. See Perry v. Cosgrove, 464 So. 2d 664, 667 (Fla. 2d DCA 1985); Cmty. Design Corp. v. Antonella, 459 So. 2d 343, 345 (Fla. 3d DCA 1984).

But at its heart, this case does not present a dispute over contract formation. Rather, it presents a dispute over contract interpretation and performance. Those are fundamentally different questions. The parties consistently acknowledged the existence of an enforceable contract. Their disagreement concerns what the contract required—a question for the trier of fact rather than a basis for imposing liability for unjust enrichment. See St. Joe Corp., 875 So. 2d at 381 ("Generally, where the parties acknowledge creation of a contract and the disagreement concerns their varying understandings about certain terms, such questions are properly submitted to a jury."); Pan Am. Bancshares, Inc. v. Trask, 278 So. 2d 313, 314 (Fla. 3d DCA 1973) ("Our review of the record convinces us that the question of the exact terms of the contract was properly submitted to the jury. Each party testified to the creation of a contract, the only disagreement being related to a variance in understanding as to certain terms. Therefore the cause was properly submitted to the jury.").

Because the record establishes an enforceable express oral contract governing the transaction, Cat Cay Holdings cannot obtain relief under a theory of unjust enrichment as a matter of law. See Peebles v. GrassMasters Prop. Mgmt., Inc., 384 So. 3d 287, 289 (Fla. 3d DCA 2023) (reversing final judgment for unjust enrichment because an express contract existed). While the trial court correctly denied Cat Cay Holdings' motion on the breach of contract claim, the trial court should have granted summary judgment for Diaz on the claim for unjust enrichment—leaving the breach of contract action for resolution by the jury. We reverse the final judgment and remand for further proceedings consistent with this opinion.

Reversed and remanded.